# FIRSTENERGY CORPORATE GOVERNANCE PLAN

## I. ADOPTION AND AMENDMENT

A. This Corporate Governance Plan shall be adopted by FirstEnergy Corp. ("FirstEnergy" or the "Company") pursuant to a stipulation of settlement among all parties to the action captioned *In re FirstEnergy Shareholder Derivative Litigation* No. 5:03-CV-1826 (the "Action") and upon approval thereof by the United States District Court for the Northern District of Ohio (the "Court").

B. The Corporate Governance Plan shall be adopted and effective only upon final approval by the Court of settlement of the Action as referenced above and shall have a term of three years from the date it is adopted. This Corporate Governance Plan may be amended from time-to-time. An amendment to this Corporate Governance Plan, other than an amendment resulting solely from a change in law or regulation or listing standard, shall be effective only upon satisfaction of the following procedure:

1. The proposed amendment must be recommended to the Independent Directors, as defined in Section III.A.1.b. below, by a vote of two-thirds of the members of the Corporate Governance Committee, as defined in Section V.D.2. below;

2. Any proposed amendment must then be approved by a vote of a majority of the Independent Directors;

3. For a period of three years from the date of approval by the Court of the settlement of the Action, the Company shall provide notice of any proposed amendment to this Plan to counsel for the Lead Derivative Plaintiff.

## II. CORPORATE CONTROL AND COMPLIANCE

A. There shall be a Director of Internal Audit. The Director of Internal Audit shall be responsible for examining and evaluating the adequacy and effectiveness of the Company's internal control procedures. This shall include analysis of the Company's computerized information

system and security as well as other issues consistent with responsibility for maintaining the Company's internal controls.

B. There shall be a Chief Ethics Officer. The Chief Ethics Officer shall be responsible for developing and implementing policies, practices and procedures designed to ensure compliance with the Company's Code of Business Conduct, this Corporate Governance Plan and with such related regulatory and legal requirements as the Board shall specify.

C. The Board shall, at all times, have at least the following committees: an Audit Committee, a Compensation Committee, a Corporate Governance Committee, a Nuclear Committee, and a Finance Committee, each as described in Section V.D. below.

III. COMPOSITION OF NOMINEES TO THE BOARD

A. Independence

1. The incumbent Board shall propose nominees to the Board such that, should the Company's shareholders elect the nominees proposed by the Board, a substantial majority of the Board shall be independent, as defined below in Section III.A.1.b.

a. A "substantial majority" of the Board shall be independent when at least two-thirds of the Directors are "Independent Directors."

b. An "Independent Director" is a Director who:

(1) is not, or in the past three years has not been, employed by the Company;

(2) does not, and in the past three years has not, individually or through a member of his or her immediate family, had a material relationship with the Company either directly or as a partner, shareholder or officer of an organization with such a relationship with the Company;

(3) is not, and in the past three years has not been, affiliated with or employed by a present or former independent auditor of the Company or an affiliate thereof;

(4) is not a member of the immediate family (*i.e.*, spouse; parent; child; sibling; father- or mother-in-law; son- or daughter-in-law; brother- or sister-in-law; or any person, other than a household employee, living in such person's home) of a person who is, or in the past three years has been, employed by the Company in an officer position, or who is barred from being an Independent Director by subsections (2) or (3) above; and

(5) is determined by the affirmative action of the Corporate Governance Committee to have no material relationship with the Company. Without limiting the foregoing, the Corporate Governance Committee will review the following relationships to determine if such relationships are material:

(i) as an officer, director or owner of a business enterprise that is a consultant or advisor to the Company;

(ii) as an officer, director or owner of a significant supplier to the Company;

(iii) as a person with any business relationship with the Company that is required to be disclosed under Section 404 of Regulation S-K of the rules and regulations promulgated by the Securities and Exchange Commission;

(iv) as a person who has any other significant commercial, industrial, banking, consulting,

legal, accounting, or charitable relationship with the Company;

(v) as a member of the immediate family (as defined in Section III.A.1.b.(4) above) of a person with any of the relationships described in subdivision (i) through (iii) of this subsection.

If a person has one or more of the relationships described in any of the subdivisions (i) through (v) of this Section III.A.1.b.(5), that person is not an Independent Director, unless the Corporate Governance Committee recommends and the Board of Directors approves the recommendation affirmatively determining that such relationship or relationships are not material. Any such determination and the bases therefore shall be disclosed in the Company's annual proxy statement.

2. Should any Independent Director learn of changes to the information used to determine independence set forth in section III.A.1. above, such Director as soon as practicable shall notify the Corporate Secretary of the relevant information.

B. The Independent Directors

1. The non-management directors, including the Independent Directors, shall meet as a group in executive session, without the Chief Executive Officer or any other non-Independent Director, at least six times in each calendar year.

2. The Independent Directors shall be entitled, acting as a group by vote of a majority of such Independent Directors, to retain legal counsel, accountants, industry consultants, or other experts, at the Company's expense, to advise the Independent Directors concerning issues arising in the exercise of their functions and powers consistent with the charters of the various Board Committees and in such other circumstances as the Board shall approve from time to time.

3. The offices of Chairman of the Board and Chief Executive Officer shall be held by separate individuals.

4. The Compensation Committee, comprised entirely of Independent Directors, shall consider objective and subjective performance criteria to be established within their discretion for the Board's evaluation of the Chief Executive Officer's performance. At least annually, the Compensation Committee will evaluate the Chief Executive Officer's performance in light of its established goals and objectives and shall cause the Chairman to communicate the results to the Chief Executive Officer and the Board. In connection with this responsibility, the Compensation Committee shall have access to advisors who are independent from management.

C. Director Compensation

Director compensation shall be considered by the Directors annually and may consist of a combination of cash and the Company's common stock. Director compensation, including any compensation for committee services, shall be the only compensation Audit Committee members receive from the Company.

D. Director Election

The Board shall be declassified as follows. While Directors elected previously to three-year terms expiring beyond the 2005 Annual Meeting will serve out their terms such that no Director previously elected to a multiyear term will have his or her term shortened, the class of directors to be elected in 2005 will be elected to one-year terms. Directors standing for election in 2006 and 2007 will likewise be elected to one-year terms so that upon the conclusion of the Annual Meeting in 2007, the declassification of the Board will be complete and all Directors will be subject to annual election.

## IV. DIRECTOR CHARACTERISTICS

### A. Board Membership Criteria

1. The Corporate Governance Committee of the Board, comprised entirely of Independent Directors, shall annually assess the size and composition of the Board in light of the operating requirements of the Company and the current makeup of the Board.

2. Assessment of membership qualifications for the Board of Directors and all Board committees should include, at a minimum, issues of diversity, age, background and training, business or administrative experience and skills, dedication and commitment; business judgment, analytical skills, problem-solving abilities and familiarity with regulatory environment.

3. The Corporate Governance Committee shall use these criteria, among others, if applicable, to evaluate the potential nominees to the Board. Such evaluations, among other factors, shall provide the basis for the Committee's recommendation of Directors to the Company's Board and shareholders.

### B. Core Competencies

1. While it is not necessary that each Director possess all Core Competencies described herein, each Director shall contribute some knowledge, experience, or skill in at least one domain that is important to the Company.

2. Such Directors shall possess experience in one or more of the following:

   a. Management or senior leadership position which demonstrates significant business or administrative experience and skills;

   b. Accounting or finance;

c. The electric utilities or nuclear power industry; or

d. Other significant and relevant areas deemed by the Corporate Governance Committee to be valuable to the Company.

3. Each Director upon appointment shall complete a course of introduction to the Company, either provided or approved by the Corporate Governance Committee. Moreover, the Company shall make available and encourage continuing education programs for Board members which may include internal strategy meetings, third-party presentations, and externally offered programs. Directors are required to participate in at least eight (8) hours of accredited training programs.

4. Consideration shall be given to obtaining a diversity of experience and perspective within the Board.

C. Time Commitment

1. Because each person serving as a Director must devote the time and attention necessary to fulfill the obligations of a Director, the Board shall adopt guidelines that address the competing time commitments that are faced when directors serve on multiple boards, and shall disclose those guidelines on the Company's website. The Company's proxy shall state that this information is available on its website, and that the information is available in print to any shareholder who requests it.

2. The Time Commitment Guidelines shall at least state that –

a. Candidates for election or re-election to the Board will not, without the Board's approval, serve on the board of directors of more than three other non-affiliated companies having securities registered under SEC regulations.

D. Re-nomination of Directors

1. In re-nominating Directors, the Corporate Governance Committee shall consider the Board Membership Criteria described in subsection A. of this Section, as well as the Core Competencies, as described in subsection B. of this Section.

2. Prior to accepting re-nomination, a Director also should evaluate for himself or herself whether he or she satisfies the Board Membership Criteria and Core Competencies set forth herein in Sections IV.A. and IV.B., respectively, of this Plan.

3. With the exception of the Chief Executive Officer, no Director first elected after 2004 who is or subsequently attains the age of 69 may be designated by the Board as a candidate or nominee for election or reelection as a Director, unless the Board determines otherwise because of the special qualifications of such Director or for other business reasons which necessitate continuity of the Board as a whole.

## V. BOARD PROCESSES AND EVALUATION

### A. The Board and Company Executive Officers

1. The Compensation Committee, comprised entirely of Independent Directors, shall, at least annually, evaluate, and, make a recommendation to the Board regarding the performance of the Chief Executive Officer. The Board will, if necessary, replace, the Chief Executive Officer.

2. The Board shall, at least annually, consider a Chief Executive Officer succession plan and receive periodic reports from appropriate executive officers on the development of other members of the Company's senior management.

3. The Board shall cause the Company, at least annually, to evaluate, and, if necessary, recommend the replacement of, the Director of Internal Audit.

4. The Board shall cause the Company, at least annually, to evaluate, and, if necessary, recommend the replacement of, the Chief Ethics Officer.

5. The Compensation Committee, comprised entirely of Independent Directors, shall review and make recommendations to the Board regarding certain senior-level officers' compensation, including, at minimum the five highest paid officers in the Company.

6. All Directors shall have access to Company senior executive officers employed in policy-making capacities.

7. The Board shall review, and, where appropriate, approve the major financial commitments and other major corporate strategic plans of the Company.

B. Internal Control and Corporate Compliance

The Audit Committee, or appropriate Committee or Committees consisting exclusively of Independent Directors, shall have oversight responsibility for internal control and corporate compliance. In particular, the Audit Committee, (or other responsible Committee or Committees) shall:

1. Review the five components of internal control – control environment, risk assessment, control activities, information and communication, and monitoring – to determine that such components are designed to ensure reasonable systems to provide:

   a. Adequate financial reporting; and

   b. Compliance with corporate policies and legal and regulatory requirements.

2. Oversee internal control systems and corporate compliance programs, including the creation, distribution and/or implementation of:

a. a code of business conduct based upon corporate policies and legal and regulatory requirements;

b. procedures for monitoring compliance with that code; and

c. methods for disseminating information regarding such programs.

3. If the Audit Committee becomes aware of any significant deficiency from corporate compliance programs or internal control programs, or of material violations of established corporate policies or legal and regulatory requirements, it shall:

a. Reasonably determine that all appropriate corrective actions have been taken in response thereto;

b. Review any management override (which shall not include waivers permitted by policies or procedures) of corporate compliance programs and internal control programs, and take the steps necessary to reasonably determine that such action or override will not occur in the future without Board approval; and

c. Review the process for reporting deficiencies in the Company's internal control structure or violations of corporate compliance polices to reasonably assure that the Director of Internal Audit and the Chief Ethics Officer are informed of any such deficiencies or violations.

4. Review corrective actions taken by the Company when significant internal control or corporate compliance problems are reported to reasonably determine that such actions are sufficient under the circumstances.

5. Require and review periodic evaluations of the Company's internal control and corporate compliance structures to reasonably determine, at a minimum, that:

   a. components of the Company's internal control and corporate compliance structures are regularly evaluated;

   b. such evaluations are performed by qualified personnel; and

   c. such evaluations have reasonable scope and depth of coverage and are conducted with sufficient frequency.

6. Review the Company's internal audit function, including:

   a. The charter of the internal audit function, to reasonably assure that it is consistent with that recommended by the Institute of Internal Auditors; and

   b. The resources provided to the internal audit group, to reasonably assure that the internal audit group has sufficient resources to carry out its charter.

7. Ensure that the FirstEnergy's internal controls and the functioning of the internal controls comply with applicable law, including the Sarbanes-Oxley Act of 2002.

8. The Audit Committee, or appropriate Committee consisting exclusively of Independent Directors, shall have oversight responsibility for regulatory compliance. In particular, it shall:

   a. Review the Company's Code of Business Conduct to determine that it is designed to provide adequate protection against violations of applicable laws and regulations; and

   b. Review the record keeping and reporting systems to measure and monitor regulatory compliance requirements.

C. Board Committees

The Board shall constitute and maintain – solely with Independent Directors – an Audit Committee, a Compensation Committee, a Corporate Governance Committee and a Nuclear Committee as well as a Finance Committee with a majority of Independent Directors.

1. The Audit Committee shall (a) be comprised of at least three Directors all of whom are Independent, all of whom shall be financially literate with working familiarity with basic finance and accounting practice or must become financially literate within a reasonable period of time after his or her appointment to the Committee; and (b) support the oversight function of the Board by reviewing on a periodic basis the Company's procedures for preparing financial statements, its internal controls, and the independence of the Company's external auditor. The Audit Committee shall:

   a. Meet at least six times per year;

   b. Review the Company's internal audit functions at least annually;

   c. Have exclusive authority to retain the firm to be employed as the Company's external auditor, and to discharge any such firm. Such retained firm:

      (1) Shall be prohibited from providing to the Company any of the following non-audit services:

         (a) bookkeeping or other services related to the accounting records or financial statements of the Company;

         (b) financial information systems design and implementation;

         (c) appraisal or valuation services, fairness opinions, or contribution-in-kind reports;

(d) actuarial services;

(e) internal audit outsourcing services;

(f) management functions or human resources;

(g) broker or dealer, investment adviser, or investment banking services;

(h) legal services and expert services unrelated to the audit; or

(i) any other service that the Audit Committee determines is impermissible, poses a potential conflict, or ought to be prohibited; and

(2) Shall obtain approval from the Audit Committee prior to performing any non-audit service, including tax services, that is not described in any of paragraphs (a) through (i) of subsection (1) above; except, however, that such firm may prepare or review income tax forms, registration statements and cost reports without such pre-approval;

(3) Shall have its lead audit partner and concurring partner rotated every 5 years, and shall be subject to consideration by the Audit Committee of whether it would be appropriate for the Company to implement a regular rotation of the independent auditor firm.

d. Obtain and review, at least annually, a report by the Company's external auditor describing: that firm's internal quality control procedures; any material issues raised by the most recent internal quality-control review or peer review of the firm, or by any inquiry or investigation by governmental or professional authorities,

within the preceding five years, respecting one or more independent audits carried out by the firm, and any steps taken to deal with any such issues; and (to assess the auditor's independence) all relationships between the auditor and the Company;

e. Establish hiring policies for employees or former employees of the Company's independent auditors that comply with all applicable laws and regulations;

f. Review the external auditor's compensation, the proposed terms of its engagement, and its independence;

g. Serve as a channel of communication between the external auditor and the Board, and between the Director of Internal Audit and the Board;

h. Have full access to all Company books and personnel;

i. Discuss separately with management and the Company's external auditor prior to the filing of each Form 10-K or Form 10-Q, among other things, the appropriateness of the Company's accounting policies;

j. Meet, without the presence of any Company employees, at least annually with the Company's external auditor to review the results of each external audit of the Company, the report of the audit, any related management letter, management's responses to recommendations made by the external auditor in connection with the audit, all significant reports of the internal auditing department, and management's responses to those reports;

k. Review the Company's annual financial statements, any certification, report, opinion, or review rendered by the external auditor in connection with those financial statements, and any significant disputes between management and the external auditor that arose in

connection with the preparation of those financial statements;

l. Consider, in consultation with the external auditor and the Director of Internal Audit, the adequacy of the Company's internal controls and compliance with the requirements of the Sarbanes-Oxley Act of 2002; and

m. Consider major changes and other major questions of choice respecting the appropriate auditing and accounting principles and practices, whether under Generally Accepted Accounting Principles or regulatory accounting principles, to be used in the preparation of the Company's audited financial statements.

2. The Corporate Governance Committee shall recommend to the Board candidates for all directorships, have oversight responsibility for the evaluation of the Board, and have principal responsibility for recommending revisions to this Corporate Governance Plan. In particular, the Corporate Governance Committee shall:

a. Periodically review the governance principles applicable to the Company;

b. Prior to each Director's re-nomination, evaluate each Director based upon established Board Membership Criteria, and upon established Core Competencies, each as set forth in Section IV. of this Corporate Governance Plan;

c. Consider, in making its recommendations, candidates for directorships proposed by the Chief Executive Officer and, within the bounds of law and practicability, by any other senior executive officer or any Director or shareholder;

d. Recommend to the Board the Director nominees to serve on Board Committees;

e. Periodically review the size of the Board;

f. Review the independence of all directors pursuant to the Independence Guidelines set forth in Section III.A.1. of this Corporate Governance Plan; and

g. Through its Chair, notify the entire Board should the Chair receive notification from a Director or from the Corporate Secretary, pursuant to Section III.A.2. of this Corporate Governance Plan, that there has been a change in the information used to determine Director independence.

3. The Compensation Committee shall support the oversight function of the Board in the area of compensation. The Compensation Committee shall:

a. Review and recommend to the Board, or determine, the annual salary, bonus, stock options, and other benefits, direct and indirect, of certain senior-level officers, including, but not limited to, the five highest-paid officers of the Company; provided, however, that shareholders shall be given the opportunity to vote on (i) all stock option plans, except for pre-existing plans (excluding any material amendments thereto), plans related to employment inducement or promotion options, option plans acquired in mergers or acquisitions, and tax qualified and excess benefit plans, as defined by the applicable NYSE rules, unless a vote on such plans is otherwise required by law; and (ii) the issuance of any equity compensation to any executive who, at the time of such issuance, is one of the Company's five highest paid executives, unless the equity compensation is issued pursuant to a plan previously approved by the Company's shareholders.

b. Review new executive compensation programs; review on a periodic basis the operation of the Company's

executive compensation programs to determine whether they are appropriately coordinated; establish and periodically review policies for the administration of executive compensation programs;

c. Cause the Chairman to meet with the Chief Executive Officer to discuss the annual evaluation of the Chief Executive Officer's performance. In connection with this responsibility, the Independent Directors shall, in their discretion, have the right to retain, at the Company's expense, advisers of their choice.

4. The Nuclear Committee shall:

a. Review the safety, reliability and quality of nuclear operations;

b. Review the effectiveness of management systems for the self-identification of problems and potential problems for prompt and complete corrective actions;

c. Meet at least six times per year with Company management responsible for the Company's compliance with nuclear power rules and regulations to review all issues relating to the Company's compliance with nuclear power rules and regulations;

d. Report regularly to the Board concerning its activities and shall make such recommendations to the Board as the Committee believes are appropriate in connection with the performance of its responsibilities.

5. The Finance Committee shall:

a. Review the Company's capital structure policies, long- and short – term debt levels, dividend policy, issuance of securities, exposure to fluctuation in interest rates, share

repurchase programs and other financial matters deemed appropriate by the Board; and

b. Report regularly to the Board concerning its activities and shall make such recommendations to the Board as the Committee believes are appropriate in connection with the performance of its responsibilities.

VI. DISCLOSURE PROGRAM

A. FirstEnergy shall maintain a disclosure program designed to facilitate communications relating to compliance with the law and FirstEnergy's policies (the "Disclosure Program"). The Disclosure Program shall include a mechanism (e.g., a toll-free compliance telephone line) to enable individuals to disclose to the Chief Ethics Officer or some other person who is not in the disclosing individual's chain of command, any identified issues or questions associated with FirstEnergy's policies, conduct, practices or procedures believed by the individual to be a potential violation of criminal, civil or administrative law. FirstEnergy shall appropriately publicize the existence of the disclosure mechanism.

B. The Disclosure Program shall emphasize a non-retribution, non-retaliation policy, and shall include a reporting mechanism for anonymous, confidential communications. Upon receipt of a disclosure, the Chief Ethics Officer (or designee) shall gather all relevant information from the disclosing individual. The Chief Ethics Officer (or designee) shall make a preliminary, good faith inquiry into the allegations set forth in every disclosure to ensure that he or she has obtained all of the information necessary to determine whether a further review should be conducted. For any disclosure that is sufficiently specific so that it reasonably: (1) permits a determination of the appropriateness of the alleged improper practice; and (2) provides an opportunity for taking corrective action, FirstEnergy shall conduct an internal review of the allegations set forth in such a disclosure and ensure that proper follow-up is conducted.

C. The Chief Ethics Officer (or designee) shall maintain a disclosure log, which shall include a record and summary of each disclosure received

(whether anonymous or not), the status of the respective internal reviews, and any corrective action taken in response to the internal reviews.

## VII. REPORTING ON COMPLIANCE

Once a year during the three-year period for which this Corporate Governance Plan is applicable, the Board shall submit a written report to Lead Plaintiffs' counsel in this Action confirming that FirstEnergy's Board has abided by all provisions of this Corporate Governance Plan.

## VIII. COMPLIANCE WITH LAW

To the extent complying with any provision of this Corporate Governance Plan violates any governing law, regulation or rule, then such provision shall be deemed automatically superceded by such law, regulation or rule.

## IX. GOVERNING LAW AND EXCLUSIVE REMEDY

This Corporate Governance Plan shall be construed in accordance with Ohio corporate law. Nothing in this Corporate Governance Plan shall be deemed to create a new or independent cause of action. Non-compliance with this Corporate Governance Plan may be remedied by injunctive relief, which shall be the exclusive remedy.

13909
S:\Settlement\First Energy.set\EE-Corporate Gov(Final).doc